IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL ACTION FILE NO. |
| v. | |
| MONIQUE DUBOSE (2), | 1:18-CR-007-ODE-JKL-2 |
| Defendant. | |

## NON-FINAL REPORT AND RECOMMENDATION

Pending before the Court is Defendant Monique Dubose's Motion to Suppress Search of Cellular Telephone or Alternatively for a *Franks* Hearing [Doc. 130] and Dubose's Motion to Suppress Statements [Doc. 131]. The government has responded to these motions [Docs. 154, 157], and Dubose has filed a reply in support of the motion to suppress evidence [Doc. 161].

On November 15, 2018, I held an evidentiary hearing on the circumstances surrounding Dubose's purported interrogation following her arrest. Homeland Security Investigations ("HSI") Special Agent Stuart C. Reagan testified at the hearing. Because this case is scheduled for trial beginning December 3, 2018, I am issuing this report and recommendation prior to the preparation of the transcript of

the evidentiary hearing to give the parties time to review and object to my findings and conclusions.

For the following reasons, it is **RECOMMENDED** that the Motion to Suppress Search of Cellular Telephone or Alternatively for a *Franks* Hearing [Doc. 130] be **DENIED** and Dubose's Motion to Suppress Statements [Doc. 131] be **GRANTED IN PART AND DENIED IN PART**.

## I.    Background

On January 9, 2018, a grand jury seated in the Northern District of Georgia returned an indictment against Quintavious Obie, charging him with five counts of human trafficking.  [Doc. 13.]  On August 21, 2018, the government superseded the indictment to, among other things, add Dubose as a defendant and charge her with conspiracy to commit witness tampering and two corresponding substantive witness tampering counts.[1]  [Doc. 71.]

Ten days later, on August 31, 2018, Dubose surrendered to SA Reagan at SA Reagan's office, accompanied by her attorney.  Initially, Dubose, her attorney, and SA Reagan all met for around ten minutes in an interview room, where SA

---

[1] On October 17, 2018, a grand jury returned a second superseding indictment, but the charges against Dubose did not change.  [Doc. 139.]

2

Reagan explained the booking process.  Afterwards, Dubose was taken separately to a processing room for booking and her attorney departed for the federal courthouse to meet her there for her initial appearance.

Prior to booking Dubose, SA Reagan had partially completed a U.S. Marshals Service ("USMS") New Arrest/Booking Packet form based on information that was already known to SA Reagan.  Among the fields of information that he completed in advance of the booking procedure was Dubose's cellular telephone number, 404-740-3499.  During the booking interview, he confirmed with Dubose that her phone number was correct.

Dubose also had in her possession an Apple iPhone (the "iPhone"), which SA Reagan seized and placed into an evidence bag because he thought it likely contained evidence of criminal activity.  SA Reagan does not recall whether he asked Dubose if the iPhone he seized was associated with her phone number.  After booking was complete, SA Reagan transported Dubose to the federal courthouse for her initial appearance and arraignment.  [*See* Doc. 84; Doc. 157 at 2-3.]  During her transport, SA Reagan asked her to give him the access code for the iPhone, but she said nothing.

On September 5, 2018, SA Reagan applied for a search warrant from United States Magistrate Judge Janet F. King to search the iPhone.   [Doc. 130-1 (application for search warrant and affidavit in support).]   Because Dubose challenges the sufficiency of the affidavit supporting the search warrant, the Court summarizes the pertinent portions of the affidavit as follows.

SA Reagan first discussed his training and experience as an HSI special agent and law enforcement officer.  (Reagan Aff. ¶¶ 3-9, 11-16.)  Among other things, he stated that he knows that persons involved with sex trafficking typically use cell phones and other computer devices to (1) maintain contact information of traffickers and victims; (2) take photographs of residences, their property, and victims; (3) communicate with victims, clients of commercial sex, other sex traffickers, and coconspirators via phone, text messaging, and other phone applications; (4) advertise prostitution services on the internet; (5) access social networking sites to look for new victims and communicate with victims and coconspirators; (6) make video and audio records; (7) maintain audio recordings or text messages; and (8) maintain records of travel, agendas, appointments, and dates. (*Id.* ¶ 14(a)-(j).)  Sex traffickers also often provide cell phones to victims for the

purpose of communicating with the trafficker and clients of commercial sex.  (*Id.* ¶ 14(k).)

To establish probable cause for the search warrant, SA Reagan stated that HSI and the FBI had been jointly investigating alleged sex trafficking of women by Obie who is also known as "Swayzii."  (Reagan Aff. ¶ 17.)  SA Reagan stated that Obie had been the subject of multiple criminal investigations into sex trafficking of adults and minors and that law enforcement had conducted physical and electronic surveillance of Obie, compiled records of local police investigations, and identified associates and coconspirators.  (*Id.* ¶ 18.)  A toll analysis of a phone used by Obie allegedly to conduct prostitution-related business indicated that a top contact was the telephone number associated with Dubose's iPhone.  (*Id.* ¶ 19.)  Agents were able to identify Dubose as the user of the iPhone through an administrative subpoena.  (*Id.* ¶ 20.)  They were also aware through an earlier FBI investigation that Dubose was the mother of Obie's child.  (*Id.*)

SA Reagan stated that on July 27, 2017, H.T., an alleged adult prostitute, was arrested during an escort service sting operation in Dunwoody, Georgia.  (Reagan Aff. ¶ 21.)  Based on posts on Obie's Instagram account, agents had identified H.T. as working for Obie.  H.T. was charged with misdemeanor state

charges of prostitution and was booked into the DeKalb County Jail.  According to records, Dubose paid the bond for H.T., who was released on July 28, 2017.  (*Id.*)

On December 12, 2017, HSI and FBI agents executed a search warrant at Obie's residence and arrested him for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  (Reagan Aff. ¶ 22.)  In a recorded interview following his arrest, Obie identified Dubose as the mother of his daughter.  Obie was detained pending trial at the Robert A. Deyton Detention Center ("RAD") after his initial appearance.  (*Id.*)  On January 9, 2018, a federal grand jury returned a five-count indictment against Obie, charging him with sex trafficking of adults by force, fraud, or coercion in violation of 18 U.S.C. § 1591.  (*Id.* ¶ 23.)

According to SA Reagan's affidavit, after Obie's arrest, agents began reviewing recorded telephone calls that Obie placed from RAD to alleged victims, witnesses, associates and coconspirators immediately after his arrest.  (Reagan Aff. ¶ 24.)  According to RAD call logs, Obie placed dozens of calls to Dubose's iPhone following his arrest, and on numerous calls he addressed the called party as "Monique" (Dubose's first name) or "Marley" (her nickname).  (*Id.* ¶¶ 22, 25.)  During many of the calls, Obie instructed Dubose to perform tasks for him, including collecting money from suspected prostitution activities and delivering

the proceeds to his counsel, deleting social media accounts, and contacting alleged victims on Obie's behalf.  (*Id.* ¶ 25.)

SA Reagan then summarized several of the alleged communications between Obie and Dubose.  On February 7, 2018, Obie allegedly instructed Dubose to contact A.V.P. (one of the alleged victims named in the indictment) and asked her to sign an affidavit denying that she had ever been victimized by Obie.  (Reagan Aff. ¶ 26.)  In that same call, Obie allegedly instructed Dubose to call another alleged victim named in the indictment, A.N.P., and provided A.N.P.'s telephone number to Dubose.  Obie also allegedly instructed Dubose to search social media for C.C., another alleged victim named in the indictment.  (*Id.*)

Then, according to SA Reagan's affidavit, on February 9, 2018, Obie allegedly directed Dubose in a recorded telephone call to text A.V.P. with the message "Swayzii is not going to talk to the Dekalb DA" and "they need to be on the same page."  (Reagan Aff. ¶ 27.)  A.V.P. had been implicated in an August 9, 2016 robbery of a prostitute who allegedly worked for Obie, and that case was being prosecuted in DeKalb County.  Local police investigators interviewed A.V.P., but as of the date of SA Reagan's affidavit, no charges had been filed as against A.V.P.  (*Id.* ¶ 27.)

On February 12, 2018, Obie and Dubose allegedly discussed A.V.P.'s refusal to sign an affidavit denying that she was the victim of sex trafficking.  (Reagan Aff. ¶ 28.)  Obie allegedly told Dubose to tell A.V.P. that the police were lying in the investigation and that A.V.P. should sign the affidavit to keep from being "bothered."  Allegedly, Obie additionally instructed Dubose to tell A.V.P. that she was the only one who had not signed an affidavit, which was not true.  (*Id.*)

Also on February 12, 2018, C.C. notified agents that an unknown person had contacted her on February 8, 2018 through direct messaging on Instagram and asked if she intended to cooperate with law enforcement against "Swayzii." (Reagan Aff. ¶ 30.)  The sender of the message, identified as Instagram account _lexii_dejee_, stated that "he [presumably, Obie] deeply apologizes for anything he has done wrong."  Instagram records obtained by law enforcement indicate that the account was assigned to Alexia Stribling, and that Obie placed at least two recorded calls to a phone number used by Stribling in February 2018.  (*Id.*)

SA Reagan averred that on February 13, 2018, allegedly during a call to the iPhone, Dubose reported to Obie that C.C. "wrote back telling them to stop and that she hopes he goes away forever."  (Reagan Aff. ¶ 29.)  Dubose allegedly also told Obie that A.V.P. had agreed to sign the affidavit.  (*Id.*)  On February 19, 2018, Obie

8

allegedly placed four consecutive calls from RAD to Dubose's iPhone.  (*Id.* ¶ 31.)
Two of the calls lasted fifteen minutes, one lasted fourteen minutes, and the final
one lasted ten minutes.  According to SA Reagan, Obie used those calls to make
three-way phone calls to alleged victim H.T.  During each call, Obie allegedly
pressured H.T. to sign an affidavit, which denied the allegations of sex trafficking
by force, fraud, or coercion; however, in each call, H.T. resisted and refused to sign
the affidavit.  In one of the calls, Dubose is captured telling Obie "she's not going
to sign it."  Also, at the end of one conversation, Obie is heard allegedly remarking
that if anyone were to listen to his calls, they would think that his statements to
H.T. were coercive.  (*Id.*)

SA Reagan next summarized an April 13, 2018 interview of A.V.P. by
agents at the U.S. Attorney's Office in Atlanta.  (Reagan Aff. ¶ 32.)  In the
interview, A.V.P. admitted that she had agreed to sign the affidavit prepared by
Obie's defense counsel, but that she had not understood the document.  A.V.P. also
provided text messages that she had received from someone known to her as
"Marley" and originating from the iPhone.  One such message dated March 18,
2018, stated:  "Swayzii said he will give u $1000 to come to the court date April
16."  (*Id.*)

9

SA Reagan next wrote that according to Georgia Department of Driver Services records, on March 16, 2018, Dubose renewed her driver's license and provided the telephone number assigned to the iPhone as on her license application. (Reagan Aff. ¶ 33.)

SA Reagan then explained that on August 21, 2018, Dubose was charged, along with Obie, in a superseding indictment with witness tampering. (Reagan Aff. ¶ 34.) He then stated that on August 31, 2018, Dubose surrendered to agents and at that time agents seized the iPhone. (*Id.* ¶ 35.) According to SA Reagan's affidavit, Dubose acknowledged the phone number of the device. (*Id.*)

Additional facts are discussed in the analysis that follows.

## II.    Motion to Suppress Evidence Seized from the iPhone

Dubose raises three main challenges to the search warrant:  (1) that SA Reagan's affidavit was insufficient to establish probable cause; (2) that the warrant was not sufficiently particularized; and (3) that the *Leon* good faith exception to the exclusionary rule is inapplicable.  The Court addresses each of those arguments in turn.

### A.    Probable Cause

A judicial officer considering an application for a search warrant must make a practical, common-sense decision as to whether, given all the circumstances set

10

forth in the affidavit before him or her, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The Eleventh Circuit has "established the following guidelines for determining the validity of a warrant affidavit: (1) demonstration of a connection between the defendant and the location to be searched; (2) demonstration of a link between the location and criminal activity; and (3) demonstration of the [confidential source's] veracity and basis of knowledge." *United States v. Davis*, 313 F.3d 1300, 1303 (11th Cir. 2002) (per curiam) (citing *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002)).

"Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner . . . ." *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994). Instead, "a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." *Id.* Accordingly, a court reviewing the issuance of a search warrant simply decides "whether the evidence viewed as a whole provided a 'substantial basis' for the [m]agistrate's finding of probable cause." *Massachusetts v. Upton*, 466 U.S. 727, 732-33 (1984) (per curiam); *see also Gates*,

462 U.S. at 238-39 ("[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis' for concluding that probable cause existed . . . ."). In evaluating the probable cause determination, moreover, "[g]reat deference is accorded to the magistrate's determination . . . ." *United States v. Gonzalez*, 940 F.2d 1413, 1419 (11th Cir. 1991).

Considering the totality of the circumstances, the Court concludes that SA Reagan's affidavit was sufficient to establish a "fair probability" that evidence of witness tampering would be located on the iPhone. SA Reagan's affidavit, when read in totality, indicates that Dubose used the iPhone to communicate with Obie and with alleged victims in what arguably appears to be efforts to influence witnesses' testimony in connection Obie's prosecution on federal sex trafficking charges.

Dubose raises a slew of arguments in support of her contention that the affidavit fails to establish probable cause to search the iPhone; however, none of those arguments has merit.

Dubose argues that SA Reagan's affidavit is defective because "the majority of the supporting documentation is in reference to sex trafficking," despite the fact that Dubose is not charged with or implicated in sex trafficking offenses. [Doc.

130 at 7.]  She further points out that SA Reagan discusses his experience with investigating sex trafficking offenses and how individuals involved in sex trafficking use cell phones, but not with regard to witness tampering.  [*Id.* at 2, 8.] The Court disagrees that the inclusion of information relating to the sex trafficking investigation and charges somehow minimizes a finding probable cause.  Indeed, it makes sense that SA Reagan's affidavit contains information about sex trafficking because the witness tampering charges are based on events that arose out of Obie's prosecution on sex trafficking charges and involve the alleged victims.  Thus, the fact that the affidavit refers to sex trafficking does not negate the conclusion that there was probable cause to believe that evidence of witness tampering would be found on the iPhone.

Dubose also argues that SA Reagan's statement that Obie used a telephone "to conduct prostitution related business" is conclusory and not supported by any facts demonstrating probable cause.  [Doc. 130 at 8.]  Not so.  SA Reagan's conclusion that Obie used a telephone to conduct prostitution-related business is supported by other statements, including that agents conducted a toll analysis of his phone from June to July 2017 (Reagan Aff. ¶ 19); agents conducted surveillance of him from June to December 2017 (*id*. ¶ 18); Obie is heard on recorded jail calls to

13

alleged victims, witnesses, associates and coconspirators immediately after his arrest (*id.* ¶ 24); and, significantly, a federal grand jury indicted Obie, charging him with five counts of sex trafficking (*id.* ¶ 23).  Considering the totality of the allegations—and not just "bits and pieces of information in isolation," *see Upton*, 466 U.S. at 732, SA Reagan's affidavit statement that Obie used a phone in connection with the alleged prostitution-related business is supported by evidence and is not conclusory.

Dubose additionally asserts that the affidavit is flawed because it states that Dubose's phone number was a top contact from Obie's phone but does not reveal until later that Dubose is the mother of Obie's child.  Dubose argues that the fact that she is the mother of Obie's child provides a legitimate reason for Obie to frequently contact Dubose, and that SA Reagan buried this information in the affidavit to obscure a legitimate explanation for by Obie and Dubose would be in frequent contact.  [Doc. 130 at 2-3.]  Dubose's insinuation that SA Reagan was trying to hide the fact that she and Obie share a child together beggars credibility. SA Reagan's affidavit is not lengthy, and SA Reagan discloses that Obie is the father of Dubose's child in the paragraph immediately following his statement that Dubose's number was a top contact of Obie's alleged number.  (*Id.* ¶¶ 19-20.)

Moreover, Dubose's assertion that the frequency of her alleged contacts with Obie could be explained by the fact that they have a child together, is, of course, not the only conclusion that can reasonably be reached based on the information in the affidavit concerning Dubose's interactions with Obie and alleged victims.

Dubose next argues that SA Reagan's affidavit is deficient because it does not include transcripts of the jail calls that SA Reagan summarized and characterized in the affidavit.  [Doc. 130 at 3-4.]  Dubose cites no authority to support the proposition that a reviewing judge must independently examine purported evidence of criminal activity in making a probable cause determination. In his affidavit, SA Reagan explicitly stated that agents reviewed recorded phone calls that Obie made from RAD and summarized some of those phone calls.  Under these circumstances, his sworn statements were sufficient.  *See United States v. Smith*, 459 F.3d 1276, 1291 n.15 (11th Cir. 2006) ("Smith points to no authority . . . nor have we independently discovered any . . . suggesting that the court cannot rely on the testimony of witnesses, but must actually view any alleged contraband to determine if probable cause existed.").

Relatedly, Dubose asserts that the conversations that SA Reagan discussed in his affidavit are "misleading and taken out of context."  [Doc. 130 at 8.]  She

15

similarly argues that SA Reagan's summary of instructions that Obie allegedly gave to Dubose are conclusory and not supported by evidence. [*Id.* at 9.] She does not, however, present any evidence to support such broad statements. The sole communications that Dubose specifically discusses occurred during a series of four three-way calls among Dubose, Obie and alleged victim H.T., summarized in Paragraph 31 of SA Reagan's affidavit. SA Reagan writes:

> During each call, OBIE repeatedly pressured HT to sign an affidavit, which denied the allegations of sex trafficking by force, fraud, or coercion. During each conversation, HT resisted OBIE's attempts and refused to sign the document. The recorded calls captured DUBOSE telling OBIE at one point "she's not going to sign it." OBIE ended one conversation with HT by admitting that if anyone were to listen to the calls, they would think that his statements to her were coercive.

(Reagan Aff. ¶ 31.) According to Dubose, in one of those calls, Obie told H.T. that "I don't want to make it seem like I am coercing you or I am bribing you or I am doing anything to make you sign this affidavit. I really don't want you to sign [the affidavit] if you don't want to sign it." [Doc. 130 at 10.] Then, according to Dubose, Obie separately told her that "if you feel like a victim then you don't sign it." In another call, Obie told H.T. that his lawyer will talk to H.T.'s lawyer about signing the affidavit and have H.T.'s lawyer review the affidavit with her before she signs it. Obie also stated to H.T. "I guess the only way we can settle this, I

16

guess I just have to have my lawyer contact your lawyer, and if he feels like it's something you can sign, he tell you." [*Id.*]  Dubose maintains that SA Reagan's statement that Obie admitted that his (Obie's) statements could be considered coercive is false, and that SA Reagan purposefully made the statement to bolster his affidavit.  [Doc. 161 at 2.]  Due to these misstatements and omissions, Dubose argues, the Court should hold a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).

Under *Franks*, a defendant may challenge a facially sufficient affidavit if she can show that it contains misrepresentations or omissions that were knowingly or recklessly made.  *Franks*, 438 at 155-56, 171.  To be entitled to relief, the defendant must show both (1) that the alleged misrepresentations or omissions were knowingly or recklessly made and (2) that the result of excluding the alleged misrepresentations and including the alleged omissions would have been a lack of probable cause for the issuance of the warrants.  *United States v. Novaton,* 271 F.3d 968, 986-87 (11th Cir. 2001).

Here, Dubose cannot make a preliminary showing that SA Reagan knowingly or recklessly made misrepresentations or omissions in his affidavit. Dubose maintains that SA Reagan deliberately mischaracterized Obie's statements

17

to make it falsely appear that he was admitting to the crime of witness tampering.

[Doc. 161 at 2-3.]  Dubose supports this argument by asserting that there is an

obvious inconsistency between what Obie said and how SA Reagan reported it in

the affidavit.  The Court cannot agree.  As best the Court can tell, it appears that

Obie's following statement to H.T. is at issue:

> And now we done went back and forth so much about
> this affidavit, that it probably wouldn't even stand in
> court now.  Because now it seems like I'm pressuring
> you.  And I'm really not.

[Doc. 154 at 17.]  The Court cannot agree with Dubose's contention that SA

Reagan's statement is so inconsistent that it suggests he knowingly or deliberately

made a false statement or omitted material information from the affidavit.  In

Obie's statement, he explicitly acknowledges that it seems like he is pressuring

H.T., and it is not unreasonable to understand him to mean that someone listening

to the calls would think that he was trying to coerce her.

But even assuming Dubose had made such a showing, a *Franks* hearing is

not warranted here because even if the omitted conversations had been included

and SA Reagan's characterization of Obie's statement were excised, the affidavit

contains numerous other facts sufficient to establish probable cause to believe that

Obie and Dubose were attempting to influence witnesses or alleged victims and

18

that Dubose used her iPhone to do so.  Accordingly, Dubose has not carried her burden to demonstrate that a *Franks* hearing is warranted.

Dubose also argues that SA Reagan's reference to Stribling's alleged contact with an alleged victim is irrelevant to probable cause to search Dubose's phone and that SA Reagan included this paragraph in "an attempt to mislead the Magistrate Judge into attributing actions of others onto Dubose in an attempt to bolster probable cause." [Doc. 130 at 3, 11.]  The Court disagrees.  SA Reagan stated in his affidavit that Obie instructed Dubose to locate C.C. using social media. (Reagan Aff. ¶ 26.)  The following day, C.C. allegedly received a message via Instagram, a social media platform, asking if she intended to cooperate with law enforcement against Obie.  (*Id*. at ¶ 30.)  Several days later, Dubose purportedly reported to Obie that C.C. hoped he would go away forever, and Obie told Dubose to cease contacting C.C.  (*Id*. at ¶ 29.)  Thus, SA Reagan's statement that C.C. received a message from what purported to be Stribling's social media account, appears to be related to the government's assertion that Dubose was assisting Obie contacting alleged victims and witnesses.

Dubose next argues that the affidavit fails to establish evidence relating to witness tampering would be found on the iPhone.  [Doc. 130 at 13.]  Specifically,

she argues that the affidavit merely summarizes phone calls between her and Obie, but that there is no indication (and, indeed, it would be extremely unlikely) that recordings of those conversations would be saved to the iPhone.  [*Id.*]  The court agrees that it is unlikely that recordings of the conversations would reside on the iPhone, but the iPhone may contain evidence such as call logs indicating when she made calls and to whom she made them.  (*See* Reagan Aff. ¶¶ 27-29.)  Moreover, SA Reagan's affidavit indicates that Dubose likely used her iPhone to do more than just make phone calls.  For example, SA Reagan stated in the affidavit that A.V.P. showed law enforcement a text she received from "Marley" and originating from the iPhone, which stated:  "Swayzii said he will give u $1000 to come to the court date April 16."[2]  (*Id.* ¶ 32.)  This allegation shows that evidence of witness tampering—including text messages—would be contained on the phone.  *See Gates*, 462 U.S. at 235 (stating that "only the probability, not a prima facie showing, of criminal activity is the standard of probable cause").

---

[2] In her reply, Dubose argues that this statement was not an attempt to bribe A.V.P. because a few days before, Dubose texted A.V.P. that Obie "also said he would love you to support him at his next court appearance, if u have to miss work he would compensate you."  [Doc. 161 at 5.]  The Court disagrees that this statement necessarily indicates that Obie was not attempting to bribe A.V.P. to attend the hearing.  As a matter of common sense, $1,000 seems like a significant amount of money to pay someone for missing even a single full day of work.

20

Finally, Dubose contends that evidence seized pursuant to the warrant should be suppressed as fruit of the poisonous tree.  She argues that agents obtained her statement that 404-740-3499 was the number assigned to the iPhone in violation of her Fifth and Sixth Amendment rights in response to agents' interrogation following her arrest.  [Doc. 130 at 4.]  Even assuming *arguendo* that agents obtained Dubose's statement in violation of her Fifth Amendment rights,[3] the Court cannot agree that evidence seized pursuant to the warrant should be suppressed.

When the government uses unconstitutionally-obtained evidence to secure a warrant, the Court applies a two-part test to determine whether the evidence seized pursuant to the warrant is admissible.  *United States v. Albury*, 782 F.3d 1285, 1291 (11th Cir. 2015).  First, the Court must excise from the affidavit any unlawfully-obtained information and determine whether the remaining information supports a finding of probable cause.  *Id.*  Second, if the remaining information supports a probable cause finding, the Court then determines whether, as a question of fact, the officers' decision to seek the warrant was the product of the unlawfully-

_____

[3] This argument implicates Dubose's rights under the Fifth Amendment — not the Sixth Amendment.  The statements in issue were made before Dubose's initial appearance on the witness tampering charges, and, thus, her Sixth Amendment right to counsel had not yet attached.  *See Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 213 (2008).

obtained information.  *Id.*; *United States v. Noriega*, 676 F.3d 1252, 1260-61, 1263 (11th Cir. 2012).

Turning to the first inquiry, the Court readily concludes that, if the statement "DUBOSE acknowledged that the DEVICE seized had the phone number 404-740-3499" were excised from SA Reagan's affidavit, probable cause would still exist to support the warrant application.  Even without that sentence, SA Reagan's affidavit makes it clear that agents knew her phone number from other sources, knew that Dubose had been in contact with Obie, and would reasonably have concluded that the iPhone they seized from her at the time of her arrest likely was the device assigned to her phone number.

As for the second inquiry, the Court likewise finds that even if Dubose had remained completely silent during the booking process, SA Reagan would still have sought a warrant to search the iPhone.  To start, SA Reagan credibly testified that even if he had not been required to take information to complete the booking form, he would still have applied for a warrant to search the phone.  He also testified that he first drafted the search warrant to search the phone in late April 2018—four months before Dubose was arrested—but that he did not apply for the warrant then because he was concerned that agents would be unable to locate the device within

22

a 14-day period to execute the search.  Further, as SA Reagan's affidavit makes clear, at the time of Dubose's arrest and the seizure of her phone, Dubose had been indicted for witness tampering and the government's investigation indicated that Dubose was using a device to communicate with Obie and alleged victims via phone and text messages.  Thus, irrespective of whether Dubose had provided information confirming the number assigned to the device there is no legitimate doubt that SA Reagan would have applied for the warrant to search the iPhone.

For these reasons, therefore, the Court concludes that SA Reagan's affidavit sufficiently demonstrated probable cause to be believe that evidence of witness tampering would be found on the iPhone.

## B.    Particularity

The Court next addresses Dubose's assertion that the warrant was not sufficiently particularized.  To be valid and enforceable, a warrant must particularly describe "the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  "Thus, '[a] warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally over broad,' and any evidence seized from the resulting search must be excluded from trial." *United States v. Carroll*, 886 F.3d 1347, 1351 (11th Cir. 2018) (alteration in original) (quoting *United States v. Travers*, 233 F.3d 1327, 1329 (11th Cir. 2000)).

23

"While a search warrant must contain sufficient specificity to guard against a general search, 'the test is the reasonableness of the description. Elaborate specificity is unnecessary.'" *Id.* (quoting *United States v. Strauss*, 678 F.2d 886, 892 (11th Cir. 1982)).

Dubose argues that the search warrant essentially authorizes "a general search of all documents regardless of their relationship to the purported offense for which the warrant is sought." [Doc. 130 at 14.] Attachment A to the search warrant authorizes law enforcement to seize the following[4]:

> All records on the DEVICE that relate to violations of 18 U.S.C. § 1512 and involve QUINTAVIOUS OBIE, MONIQUE DUBOSE and associates, from December 12, 2017, to present, including:
>
>> A. E-mails with attachments, texts, and other internet correspondence between OBIE, DUBOSE, and any associates; or between associates of OBIE and DUBOSE;
>>
>> B. any information related to persons aiding and abetting Quintavious OBIE (including names, addresses, phone numbers, or any other identifying information);

---

[4] Dubose does not provide a copy of the search warrant in support of her motion; nonetheless, the Court presumes that Attachment A to the warrant application is identical to the "Attachment A" specifying the materials to be seized that was attached to the warrant itself.

C. evidence of prostitution, escort services, or pimping;

D. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of usertyped web addresses.

E. call logs, voicemail recordings, text messages, and attachments;

F. photographs, videos, audio recordings, images, other recordings, or electronic media;

G. notepad documents, recordings of incoming calls, calendar information, and/or other documents reflecting communications;

H. mobile application "app" data;

I. all bank records, checks, credit card bills, account information, and other financial records; and

J. evidence of user attribution showing who used or owned the DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

[Doc. 130-1 at 15-16.]  Dubose maintains that the foregoing items are not limited to evidence of violations of § 1512, the witness tampering statute, but instead

request information that is not relevant to that offense or relates to sex trafficking, a wholly separate offense.  [Doc. 130 at 14-15.]

The government responds that Attachment A limits seizure to evidence that relates to alleged violations of the witness tampering statute.  [Doc. 154 at 14.] Further, the government maintains, Attachment A limits the seizure of evidence to evidence dated December 12, 2017, forward as well as to general categories of electronic evidence.  [*Id.* at 14-15.]

Though broad, the Court cannot agree with Dubose that the warrant violates the particularity clause.  To start, the Attachment A authorizes the seizure of records on the iPhone that relate to violations of the federal witness tampering statute for the time period beginning December 12, 2017, forward.  Thus, each of the ten subcategories of information must be read as limited in both subject matter and time.  Contrary to Dubose's argument, therefore, evidence of prostitution, escort services or pimping can in fact relate to witness tampering because the substance of alleged tampering was aimed at countering the government's sex trafficking charges against Obie.  Likewise, it may well be the case that records of Internet activity would relate to witness tampering in light of SA Reagan's statement indicating that Obie directed Dubose to locate C.C. on social media.

26

Similarly, bank records may be related to witness tampering in light of SA Reagan's statement that that Obie allegedly directed Dubose to tell A.V.P. that he would pay her $1,000 to come to court.  Accordingly, the Court rejects Dubose's argument that the warrant violated the particularity requirements of the Fourth Amendment.[5]

### C.    Good Faith Exception

Even if the search warrant at issue in this case were found to be invalid, suppression of the evidence seized from the cell phone would not be warranted because the agents executing the warrant reasonably relied in good faith on the validity of the warrants.  *See United States v. Leon*, 468 U.S. 897 (1984).

In *Leon,* the Supreme Court recognized a good-faith exception to the exclusionary rule for searches conducted pursuant to warrants.  Observing that the purpose of the exclusionary rule is to deter unlawful police conduct, the Court

---

[5] On reply, Dubose states that the government produced to her counsel more than 32 GB of data extracted from the iPhone, the vast majority of which has no relevance to this case.  [Doc. 161 at 6.]  This argument only goes so far, however.  Dubose cites no authority to support the proposition that just because agents arguably exceeded the scope of a search warrant means that it is not sufficiently particularized.  It appears to the Court that the proper approach would be to move to suppress evidence that was seized that was not within the scope of the warrant; however, Dubose has not moved for suppression on such grounds.

found that this purpose would not be served, and the exclusionary rule should not be applied, when an officer, acting with objective good faith, has obtained a search warrant from a judge and acted within its scope. *See Leon*, 468 U.S. at 920-21. Nonetheless, the *Leon* Court noted four situations in which the suppression of evidence would still be appropriate: (1) when the judicial officer issues the warrant on a deliberately or recklessly false affidavit; (2) when the judicial officer wholly abandons his judicial role; (3) when the warrant is issued on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) when the warrant is so facially deficient that an officer could not reasonably presume it to be valid. *Id.* at 923.

Dubose first argues that the *Leon* good faith exception is inapplicable because the affidavit for the search warrant was predicated, in part, on Dubose's acknowledgement that the seized device had the phone number 404-740-3499. [Doc. 130 at 19.] As just discussed above, this statement, even if unconstitutionally obtained, does not taint the warrant as a whole.

Next, Dubose contends that the good faith exception is inapplicable because the issuing judge was misled by information that SA Reagan knew was false or would have known was false except for his reckless disregard of the truth. [Doc.

28

130 at 20-22.]  This argument is a rehash of Dubose's demand for a *Franks* hearing, which as discussed above, is due to be denied.

Dubose next argues that SA Reagan's affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. [Doc. 130 at 22.]  She further argues that SA Reagan's affidavit was entirely devoid of facts from which Judge King could base her decision, and that "all that is present are conclusory statements made by the affiant which are not sufficient for probable cause."  [*Id.* at 23.]  These arguments are repetitive of Dubose's earlier assertions that the warrant failed to establish probable cause, and the Court find them unpersuasive.  As stated earlier, SA Reagan's affidavit established sufficient probable cause, and in any case is not "so lacking . . . as to render official belief in its existence entirely unreasonable."

For these reasons, it is **RECOMMENDED** that Dubose's Motion to Suppress [Doc. 130] be **DENIED**.

### III.   Motion to Suppress Statements

The Court next addresses Dubose's motion to suppress statements.  [Doc. 131.]  Dubose's motion is not specific, but at the pretrial conference, her counsel specified that the statement at issue was her acknowledgement to SA Reagan that the iPhone seized from her at the time of her arrest on August 31, 2018, had the

phone number 404-740-3499.  (*See* Reagan Aff. ¶ 35.)  The government responds that Dubose made the statement in response to routine booking questions with respect to which *Miranda* does not apply.  [Doc. 157.]

"An officer's request for 'routine' information for booking purposes is not an interrogation under *Miranda*, even though that information turns out to be incriminating."  *United States v. Sweeting*, 933 F.2d 962, 965 (11th Cir. 1991) (internal quotation marks omitted) (citing *United States v. Sims*, 719 F.2d 375, 378-79 (11th Cir 1983)).  "However, questions that are reasonably likely to elicit an incriminating response may breach this booking exception."  *United States v. Sanchez*, 2:16-cr-10-RWS-JCF, __ F. Supp. 3d ___, ___ (N.D. Ga. Sept. 12, 2018).

At the evidentiary hearing, SA Reagan testified that in anticipation of Dubose's self-surrender on August 31, 2018, he filled out the booking information to indicate that Dubose's phone number was 404-740-3499 based on information already known to law enforcement.  Then, during the booking process, he asked her to confirm that was her number, and Dubose responded affirmatively.  He testified that asking an arrestee for his or her phone number is a routine question required by USMS protocol.

The Court agrees with the government that Dubose's statement confirming her phone number was in response to a routine booking question and, therefore, the questioning falls outside the ambit of *Miranda*. *See United States v. Broadu*s, 7 F.3d 460, 464 (6th Cir. 1993) (question about defendant's telephone number was routine booking question absent evidence that law enforcement used the question to elicit incriminating statements from the suspect); *United States v. Veloz*, No. CR 12-10264-RGS, 2016 WL 6405808, at *1 (D. Mass. Oct. 27, 2016) (holding request for telephone number was routine booking information because "[i]n this age of the ubiquitous cellular phone, a person's telephone number is as much a part of his identity as is his name, address, and date of birth"); *United States v. Nogueira*, No. 08-CR-876 (JG), 2009 WL 3242087, at *2 (E.D.N.Y. Oct. 6, 2009) ("[Q]uestions regarding the defendants' telephone numbers amounted to routine booking questions necessarily and appropriately asked during the arrest and booking process."). Nor is there any indication that SA Reagan asked the question to provoke an incriminating response. Thus, to the extent that Dubose seeks to suppress her statement confirming her phone number to SA Reagan, the motion should be denied.

More problematic, however, is the statement that Dubose purportedly made acknowledging that the number assigned to the device was 404-740-3499.  To recap, SA Reagan's affidavit states that Dubose "acknowledged that the [iPhone] seized had the phone number 404-740-3499" (Reagan Aff. ¶ 35), which can be read as indicating that Dubose explicitly told SA Reagan that her phone number was associated with the iPhone.  It is unclear whether Dubose actually made such a statement or, assuming she made such a statement, what question elicited the response.  Indeed, at the evidentiary hearing, SA Reagan testified that he could not recall whether he asked Dubose to identify the number assigned to the device.  But, presuming for purposes of argument that SA Reagan did ask Dubose if the iPhone was associated with the phone number on the booking form, such a question would be investigatory because such a question elicits information about the particular device, and not information about Dubose.  Thus, such a question would not constitute a "routing booking" question, and Dubose's purported statement acknowledging that the iPhone was assigned the phone number 404-740-3499 would not fall within the booking exception.  *See United States v. Son*, No. 1:12-CR-42-ODE, 2012 WL 4711978, at *7 (N.D. Ga. Oct. 2, 2012) (suppressing statement made during booking process in response to investigatory question).

32

Thus, to the extent that the government seeks to introduce a statement that Dubose made during the booking process acknowledging that the iPhone was associated with her phone number, the statement should be suppressed.

## IV.   Conclusion

For the foregoing reasons, it is **RECOMMENDED** that Monique Dubose's Motion to Suppress Search of Cellular Telephone or Alternatively for a *Franks* Hearing [Doc. 130] be **DENIED** and Dubose's Motion to Suppress Statements [Doc. 131] be **GRANTED IN PART AND DENIED IN PART**.

I have now addressed all referred pretrial matters relating to Dubose and have not been advised of any impediments to the scheduling of a trial as to her. Accordingly, this case is **CERTIFIED READY FOR TRIAL** as to Dubose.

**IT IS SO RECOMMENDED** this 16th day of November 2018.

_____
JOHN K. LARKINS III
United States Magistrate Judge